# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NANCY MINOR,                    )
                                )
            Plaintiff,          )
                                )
        v.                      )       1:13CV750
                                )
SALVATION ARMY,                 )
                                )
            Defendant.          )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 2). The Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of this action without prejudice, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.

### LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees,

however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the in forma pauperis statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2). A complaint falls short when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

2

action, supported by mere conclusory statements, do not suffice." Id.[1]

DISCUSSION

Plaintiff's Complaint names Salvation Army as the only Defendant. (Docket Entry 2 at 1.) It asserts that Plaintiff suffered racial discrimination by employees of the Salvation Army homeless shelter where she temporarily resided. (Id. at 2.) The Complaint further alleges that Salvation Army failed to accommodate her disability. (Id. at 1.) As factual matter supporting these allegations, the Complaint offers the following:

1) while Plaintiff resided at the Salvation Army shelter, a "Police report [was] done [and a] warrant given out on 2 room mate[s] at Salvation Army because of threats given by them" (id. at 3);

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly in dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

3

2) one roommate said, "I want to fight you lets go" and another said, "I am going to Fruck you up" and "snitches get a lot of stiches [sic]" (id.);

3) Plaintiff has "note[s] by 2 or 3 different doctors stating they are making my codation [sic] worse and to remove me from the room" (id. at 4);

4) Salvation Army did not remove Plaintiff from her living situation with these two roommates (id. at 3);

5) Salvation Army staff asked Plaintiff, "when you going to leave?" and told her, "if you lay there no one else can watch T.V. you chase them away" (id.); and

6) a case worker told Plaintiff "[y]ou need to ignore them like I ignore you" (id.).

Both the Fair Housing Act and 42 U.S.C. § 1982 prohibit racial discrimination in housing transactions and provide for causes of action against private parties. See 42 U.S.C. § 3601 et seq.; Jones v. Alfred H. Mayer Co., 392 U.S. 409, 412 (1968). In limited circumstances, these statutes may permit claims against temporary, nonprofit housing facilities such as a homeless shelter. See Project Life, Inc. v. Glendening, 139 F. Supp. 2d 703, 710-11, (D. Md. 2001), aff'd, 46 F. App'x 147 (4th Cir. 2002) (applying Fair Housing Act to residential facility for substance abusers).

However, Plaintiff's Complaint offers no facts showing that any of her alleged grievances occurred because of her race.

4

Plaintiff's Complaint does not indicate the races of the shelter employees or the two roommates with whom she quarreled. (Docket Entry 2 at 2-4.) Moreover, the alleged comments that Salvation Army employees made to Plaintiff do not appear to involve any racial component. (Id.)

Nor would the allegation that a shelter employee of one race treated a shelter resident of a different race rudely present a plausible claim of discrimination. See, e.g., Hawkins v. Pepsico, Inc., 203 F.3d 274, 282 (4th Cir. 2000) (declaring that the "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races."). Further, simply invoking the terms "racial issues" or "discrimination" does not suffice to state a claim. See, e.g., Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, much of the conduct discussed in Plaintiff's complaint concerns the actions of fellow residents at the shelter rather than the shelter employees and thus would not support a claim against Salvation Army. In sum, Plaintiff's Complaint fails to state a claim for racial discrimination.

Plaintiff's Complaint also asserts a claim based on the failure of Salvation Army to accommodate an unspecified disability. (Docket Entry 2 at 1.) Title III of the Americans with Disabilities Act ("ADA") - which covers public accommodations and

5

services operated by private entities - applies to a homeless shelter.  42 U.S.C. § 12181(7)(K).  In some circumstances, a homeless shelter may have to accommodate an individual who qualifies as disabled under the ADA.  See PGA Tour, Inc. v. Martin, 532 U.S. 661, 688 (2001) ("Title III of the [ADA] requires without exception that . . . an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration.").  The ADA considers an individual disabled if such individual has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [has] a record of such impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).  However, Plaintiff's Complaint presents no facts to show that she suffers, has suffered, or is regarded as suffering from a qualifying disability under the ADA.  (Docket Entry 2 at 2-4.)  Unless Plaintiff's condition meets the ADA's definition of disability, she possesses no right to any individualized accommodation under Title III.

Assuming Plaintiff qualifies as disabled under the ADA, Title III requires a place of public accommodation "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services,

6

facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). Plaintiff's Complaint indicates that she requested a room transfer because her roommates "ma[de] her codation [sic] worse," but it does not set forth sufficient factual matter to establish that moving her to a different room would constitute a "reasonable" accommodation or a step necessary to afford her equal access to the shelter's services and facilities. (Docket Entry 2 at 2-4.) As with Plaintiff's claim of racial discrimination, invoking terms such as "disability" or "accommodation" does not state a claim. See, e.g., Iqbal, 556 U.S. at 678. The Complaint thus fails to state a plausible claim regarding any failure to accommodate a disability.

As a final matter, Plaintiff's Complaint fails to request any relief that the Court could grant. Specifically, the Complaint seeks relief in the form of (1) "justice," (2) "they need to be watch from the state," and (3) "my court cost refunded back to me." (Docket Entry 2 at 5.)[2] A request for "justice" or state oversight does not afford sufficient specificity to support an injunction. See Schmidt v. Lessard, 414 U.S. 473, 475-76 (1974) (citing Fed. R. Civ. P. 65(d)). Moreover, Title III of the ADA does not offer

---

[2] The Complaint does not identify the court costs at issue. If pressed, the undersigned Magistrate Judge would presume that they arise from a fight which occurred between Plaintiff and her roommates at the shelter. (See Docket Entry 2 at 3.)

7

monetary damages in actions by private parties. See 42 U.S.C. § 12188(a)(1); Goodwin v. C.N.J., Inc., 436 F.3d 44, 50 (1st Cir. 2006). Finally, although the Fair Housing Act and 42 U.S.C. § 1982 make damages available to prevailing litigants, Plaintiff's request for a refund of court costs in a loosely related action appears too attenuated from any alleged discrimination. See, e.g., Jordan v. Dellway Villa of Tenn., Ltd., 661 F. 2d 588, 594-595 (6th Cir. 1981) (finding hypothetical factors irrelevant to damages inquiry under Fair Housing Act). Therefore, even if Plaintiff's Complaint stated a plausible claim for housing discrimination or failure to accommodate her disability, the Court cannot provide Plaintiff's requested relief.

CONCLUSION

Plaintiff's Complaint fails to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL WITHOUT PREJUDICE.**

**IT IS RECOMMENDED** that this action be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

          /s/ L. Patrick Auld
          **L. Patrick Auld**
   **United States Magistrate Judge**

September 16, 2013